UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. S2-4:22-CR-0229 JAR |
| v. ) | |
| ) | |
| DAVANTE LINDSEY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1.   PARTIES:**

The parties are the Defendant Davante Lindsey, represented by defense counsel Michael Jones and Travis Noble, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.   GUILTY PLEA:**

**A.   The Plea:**   On July 7, 2023, the Defendant pled guilty to Counts One and Thirteen without a plea agreement, but pursuant to a Stipulation of Facts. Thereafter, a second superseding indictment was filed. At this time, Counts Five, Fourteen, Sixteen, Nineteen, and Twenty-One remain pending. In order to resolve the remaining counts and pursuant to Rule 11(c)(1)(A), of the

Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Counts Sixteen, Nineteen, and Twenty-One of the Second Superseding Indictment, the United States agrees the United States agrees to move for the dismissal as to the Defendant of Counts Five and Fourteen at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

  **B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. Additionally, the parties make recommendations regarding how the guidelines may be applied regarding Count One, to which the Defendant previously pled guilty without a plea agreement. The parties further agree that the parties shall jointly recommend a sentence between 120 months and 144 months for all counts to which the Defendant has pled guilty, including those counts to which the Defendant pled guilty without a plea agreement. The Defendant also agrees, pursuant to his guilty pleas, all property subject to forfeiture under the applicable statutes, including, but not limited to:

  a. Approximately $77,408.00 U.S. Currency;

  b. 2015 Dodge Challenger Passenger, VIN: 2C3CDZC94FH892732;

  c. 2018 Jeep Grand Cherokee Passenger, VIN 1C4RJFN90JC365695;

  d. Real property at 4669 Elmbank Avenue, Saint Louis, Missouri;

  e. Real property at 7101 Paisley, Saint Louis, Missouri;

  f. CMMG Inc. MK57 Banshee Pistol;

  g. Romarm/Cugir Micro Draco Pistol;

  h. Smith & Wesson M&P 9 Shield Pistol;

      i. Ruger LC380 Pistol;

The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3.**  **ELEMENTS:**

    **A.**  **Count Sixteen:** As to Count Sixteen, the Defendant admits to knowingly violating Title 18, United States Code, Section 1512(b)(3) and (k), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

        **(i)**    The Defendant knowingly conspired with others to use intimidation and threats against other individuals;

        **(ii)**    In doing so, the Defendant intended to hinder, delay, and prevent the communication of information to a law enforcement officer relating to the commission of the drug trafficking conspiracy set forth in Count One.

    **C.**  **Count Nineteen:** As to Count Nineteen, the Defendant admits to knowingly violating Title 18, United States Code, Section 1956(a)(1)(B)(i) and (h), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

        **(i)**    The Defendant and others reached an agreement to conduct illegal financial transactions;

        **(ii)**    The Defendant voluntarily and intentionally joined the agreement at the time it was first reached or at some time later while it was still in effect;

        **(iii)**    At the time he joined the agreement, the Defendant knew of the purpose of the agreement;

(iv) The Defendant conducted in at least one financial transaction which affected interstate or foreign commerce;

(v) The Defendant conducted the financial transaction(s) with money that involved the proceeds from the unlawful distribution of fentanyl;

(vi) At the time the Defendant conducted in the financial transaction(s), the defendant knew the money represented the proceeds of some form of unlawful activity; and

(vii) The Defendant conducted the financial transaction(s) with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of fentanyl distribution.

**D.** **Count Twenty-One**: As to Count Twenty-One, the Defendant admits to knowingly violating Title 18, United States Code, Section 1957(a), and admits there is a factual basis for the plea and further understands that the elements of the crime are:

(i) The Defendant knowingly engaged in a monetary transaction;

(ii) The monetary transaction was of currency of a value greater than $10,000 and derived from the distribution of fentanyl;

(iii) The Defendant knew the monetary transaction involved proceeds of distribution of fentanyl; and

(iv) The monetary transaction in some way or degree affected interstate commerce.

**4.** **FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at a time unknown, but at least from September 30, 2021, and continuing through the date of the Second Superseding Indictment, the Defendant knowingly joined with others to distribute fentanyl in the Eastern District of Missouri and elsewhere as part of a drug trafficking organization ("DTO"). Specifically, the Defendant, Andre Pearson, and others acquired fentanyl from various sources and then directed multiple individuals to prepare, package, and distribute fentanyl to drug users. At times, the Defendant operated cellular phones used in the DTO, sending "advertisement" text messages about fentanyl for sale and answering calls and text messages from drug users, directing them where to go to purchase fentanyl from others in the DTO. The Defendant, Andre Pearson, and others coordinated individuals to "work" at various locations to distribute fentanyl to drug users, ensured the DTO had sufficient quantities of fentanyl to sell at each location, collected proceeds from fentanyl sales, and paid individuals involved in the conspiracy. The Defendant and Andre Pearson also made arrangements with drug users to permit members of the DTO to sell fentanyl out of the drug users' residences, in exchange for fentanyl and/or cash. As outlined in the Stipulation of Facts [Doc. 485], law enforcement seized large quantities of fentanyl throughout the investigation. Based upon the evidence and the parties' approximation of the controlled substances that are the subject of the conspiracy, the parties agree that the amount of fentanyl attributable to the Defendant is more than 160 grams, but less than 280 grams of fentanyl.

On February 17, 2022, SLMPD detectives were conducting electronic and physical surveillance of a DTO cellular phone. The DTO cellular phone was originally located at 2742 Park, a residence owned by the Defendant's significant other and where the Defendant frequently resided. The Defendant left the residence with the DTO cellular phone, driving a Chrysler 300 sedan. SLMPD officers conducted a traffic stop of the Defendant in a BJC Hospital parking garage. The Defendant was in possession of the DTO cellular phone being surveilled by SLMPD, seven additional cellular phones, over $8,000 in cash, and a Glock 20 10mm firearm. The Defendant admits the cash was proceeds from fentanyl distribution.

On April 28, 2022, ATF agents executed a search warrant at 2742 Park Avenue. Located inside the residence was the Defendant, his significant other, the DTO cellular phone being surveilled by ATF agents, 10 additional cellular phones, over $77,00 in cash, and four firearms. The Defendant was taken into custody on federal warrant for the fentanyl conspiracy.

Also on April 28, 2022, the Defendant, from the Jennings Jail, contacted co-defendant Willie Lindsey. During a phone call, Davante Lindsey and Willie Lindsey discussed who was named in the indictment and search warrants, specifically identifying co-defendants Tony Evans and Araven Johnson, who had been residing at the DTO-owned residence at 4669 Elmbank Ave. Davante Lindsey instructed Willie Lindsey to "kick they ass out" of the residence on Elmbank, referring to Evans and Johnson. Less than two hours later, surveillance video reflects Jamond Dismukes, Edward Hopkins, and a third male arrived at the Elmbank residence armed with firearms. The men went inside the residence, armed, and left a short time later. While inside, the Dismukes, Hopkins and the other male ordered the individuals inside to vacate the premises, specifically referencing how Johnson was named in "paperwork." Later that day, the Dismukes,

Hopkins and the other male returned, still armed. Now aware that co-defendant Johnson was in custody, the men informed the individuals at the residence that Johnson must move out the residence and must "come talk to them" when she was released, because her "name in too much paperwork." The Defendant's actions were intended to hinder, delay, and prevent the communication of information to a law enforcement officer relating to the commission of the drug trafficking conspiracy.

Between June 1, 2019 and April 28, 2022, the Defendant knowingly joined with Birtha Lindsey to conduct financial transactions to conceal or disguise the nature, location, source, ownership, and control of proceeds from fentanyl distribution. Specifically, on or before June 17, 2019, the Defendant provided $7,000 in cash for the purchase of a residence located at 4669 Elmbank Avenue, Saint Louis, Missouri. Birtha Lindsey signed all paperwork for the purchase. At times, the residence at 4669 Elmbank was used to package and distribute fentanyl.

On or before December 7, 2021, the Defendant provided $17,000 in cash for the purchase of a residence located at 7101 Paisley, Saint Louis, Missouri. Birtha Lindsey signed all paperwork for the purchase.

In January of 2021, the Defendant provided $55,000 in cash for the purchase of a 2019 Jeep Grand Cherokee. On March 8, 2022, another person signed all paperwork for the purchase, concealing who owned the vehicle.

The cash for all of these purchases was derived from fentanyl distribution. The Defendant conducted the financial transactions with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of fentanyl distribution. The Defendant admits the financial transactions affected interstate commerce.

The Defendant conducted these financial transactions with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of fentanyl distribution. The Defendant admits the financial transactions affected interstate commerce.

5. **STATUTORY PENALTIES:**

   A. **Statutory Penalties**: The Defendant fully understands that the maximum possible penalties provided by law for the crimes to which the Defendant is pleading guilty are:

   (i) **Count Sixteen:** imprisonment of not more than twenty years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

   (iii) **Count Nineteen:** imprisonment of not more than twenty years, a fine of not more than $500,000 or twice the value of the money laundered, or both such imprisonment and fine. The Court shall impose a period of supervised release of not more than three years.

   (iv) **Count Twenty-One:** imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall impose a period of supervised release of not more than three years.

6. **U.S. SENTENCING GUIDELINES: 2023 MANUAL**

   The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

   **COUNT ONE**
   **CONSPIRACY TO DISTRIBUTE FENTANYL**

   (i) **Chapter 2 Offense Conduct:**

Page **8** of **19**

   **(a)** **Base Offense Level**:  The parties agree that the Base Offense Level of 26, as found in Section 2D1.1(c)(6). The parties further agree that the total amount of controlled substances attributable to the Defendant are, in the aggregate, at least 160 grams but less than 280 grams, resulting in the agreed Base Offense Level.

   **(b)** **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply:

    (1) Two levels will be added pursuant to 2D1.1(b)(1) because the firearms were possessed.

    (2) Two levels will be added pursuant to 2D1.1(b)(12), because the Defendant maintained a premises for the purpose of distributing and/or manufacturing a controlled substance.

  **(ii)** **Chapter 3 and 4 Adjustments**:

   **(a)** **Other Adjustments**:  The parties agree following additional adjustments apply: Either four levels will be added pursuant to 3B1.1(a), because the Defendant was an organizer or leader of the criminal activity or three levels will be added pursuant to 3B1.1(b) because the Defendant was a manager or supervisor of the criminal activity.

   **(b)** **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of

guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

      **(c)**   **Other Adjustments:** The parties have no further agreement regarding any other adjustments.

## COUNT SIXTEEN
## CONSPIRACY TO TAMPER WITH A WITNESS

**A. Offense Conduct:**

    **(i)**   **Chapter 2 Offense Conduct:**

      **(a)**   **Base Offense Level:** The parties agree that the Base Offense Level is 20, as found in Sections 2J1.2, 2X3.1, and 2D1.1(c)(6).

      **(b)**   **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: none known at this time.

    **(ii)**   **Chapter 3 and 4 Adjustments:**

(a) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**COUNTS NINETEEN & TWENTY-ONE**
**CONSPIRACY TO COMMIT MONEY LAUNDERING & MONEY LAUNDERING**

A. **Offense Conduct:**

    (i) **Chapter 2 Offense Conduct:**

   **(a)** **Base Offense Level**: The parties agree that the Base Offense Level is 28, as found in Sections 2S1.1 and 2D1.1.

   **(b)** **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: Two levels will be added pursuant to 2S1.1(b)(2)(B).

  **(ii)** **Chapter 3 and 4 Adjustments**:

   **(a)** **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

  The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section

3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Level is 27.

    C.    **Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

    D.    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7.    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    A.    **Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

      **i.**    **Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea for all counts to which the Defendant had pled guilty.

      **ii.**    **Sentencing Issues:**  In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History for all counts to which the Defendant had pled guilty. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant within or above the determined Sentencing Guidelines range.

    **B.**    **Habeas Corpus:**  The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel, for all counts to which the Defendant has pled guilty.

    **C.**    **Right to Records:**  The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **A.** **Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

    **B.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

    **C.** **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

    **D.** **Mandatory Special Assessment:** This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

E.    **Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

F.    **Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration, and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

G.    **Forfeiture:** The Defendant agrees to forfeit all of the Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. The Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of the Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. The Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. The Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

9.    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the United States' case and any defenses.

**10.   VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

| | |
|---|---|
| 5/29/2024<br>Date | Jennifer L. Szczucinski<br>Assistant United States Attorney |
| 5/31/24<br>Date | Davante Lindsey<br>Defendant |
| 5/31/24<br>Date | Michael Jones/Travis Noble<br>Attorney for Defendant |